UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARK WILLIAM BOUSCHOR,

        Plaintiff,                             Case No. 2:15-cv-47

v.                                               HON. TIMOTHY P. GREELEY

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## **OPINION**

        Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on January 25, 2012.  *See* ECF No. 7-2 at 15.  Plaintiff alleges that he became disabled on January 1, 2009. ECF No. 7-2 at 15.  On April 10, 2012, Plaintiff's application was denied, and on May 23, 2012, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ).  ECF No. 7-2 at 15.  The ALJ held a hearing on August 21, 2013.  ECF No. 7-2 at 15.  At the hearing, Plaintiff was represented by counsel.  ECF No. 7-2 at 15, 34.  Testifying at the hearing were Plaintiff and vocational expert John Reiser.  ECF No. 7-2 at 15.  In a decision issued October 3, 2013, the ALJ denied Plaintiff's claim for benefits.  ECF No. 7-2 at 15-26.  Plaintiff appealed to the Appeals Council, which denied his request for review on January 16, 2015.  ECF No. 7-2 at 1.  Plaintiff then filed this action on March 18, 2015.[1]  ECF No. 1.

        Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine,

---

[1] Both parties consented to proceed before a Magistrate Judge on June 18, 2015. ECF No. 9.

bilateral carpal tunnel syndrome, and degenerative joint disease of the left shoulder. ECF No. 7-2 at 17.  At his hearing, Plaintiff testified that he used to work as a psychiatric aide, correctional officer, and construction worker.  ECF No. 7-2 at 44-48, 72-73.  He stated that he cannot dress himself and that brushing his teeth is difficult.  ECF No. 7-2 at 50, 57.  He uses a cane for walking because he has issues with balance.  ECF No. 7-2 at 52.  Plaintiff can walk a block and a half to retrieve the mail, but it is a twenty minute task.  ECF No. 7-2 at 61.  He spends his days primarily eating and sleeping.  ECF No. 7-2 at 58-64.  Plaintiff testified that he can sit and stand for five to seven minutes at a time.  ECF No. 7-2 at 67.  Plaintiff stated that he has not worked, or looked for work, since October 2008.  ECF No. 7-2 at 42-43.

> Vocational expert John Reiser testified at the hearing and was asked to evaluate Plaintiff's ability to perform his past relevant work based on different hypotheticals. ECF No. 7-2 at 71-82.  The first hypothetical scenario asked whether a person of Plaintiff's age, education, and work experience that had the following limitations would be able to perform Plaintiff's past relevant work: lift up to twenty pounds occasionally and ten pounds frequently; stand and walk about six hours collectively and sit for about six hours in an eight hour work day; limited to occasional pushing and pulling with the left upper extremity; precluded from climbing ropes, ladders, and scaffolding; frequently (not constantly) handle and finger with the left upper extremity; occasionally crawl; avoid more than occasional exposure to vibration of the left upper extremity and hazards due to reports of vertigo; be off task up to ten percent of the work day in addition to regular breaks due to pain; and limited to routine tasks that do not involve fast paced production.  ECF No. 7-2 at 73-74.  Mr. Reiser indicated that this type of person could not perform Plaintiff's past relevant work. ECF No. 7-2 at 74.  However, this person could perform

unskilled work such as: a cleaner or housekeeper (22,000 regionally), a packaging machine operator (9,000 regionally), and a general office worker (11,000 regionally).  ECF No. 7-2 at 74-75.  In addition, Mr. Reiser testified that this person could perform the following sedentary jobs: production worker (2,000), information clerk (3,500), and general office clerk (4,300). ECF No. 7-2 at 75-76.  In the next hypothetical, the ALJ asked whether this person could perform competitive work at any exertional level with the additional limitation of being unable to engage in a sustained work activity on a regular and continuing basis for eight hours a day, five days a week or an equivalent work schedule. ECF No. 7-2 at 76.  Mr. Reiser stated that there would be no employment for this type of person.  ECF No. 7-2 at 76.

The ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, and degenerative joint disease of the left shoulder. ECF No. 7-2 at 17. Based on these conditions and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform work as a general office clerk, an information/appointment clerk, or a production worker. ECF No. 7-2 at 25.

Plaintiff filed an appeal on March 18, 2015 (ECF No. 1) alleging that the ALJ's decision to deny social security benefits to Plaintiff was improper (ECF No. 10).  Defendant Commissioner of Social Security filed a response on August 19, 2015.  ECF No. 11.  Plaintiff has not filed a reply. The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

    The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. ECF No. 7-2 at 17; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the following severe impairments:

degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, and degenerative joint disease of the left shoulder. ECF No. 7-2 at 18. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. ECF No. 7-2 at 20. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a), with the additional limitations of: no more than frequent handling and fingering or occasional pushing and pulling with the left upper extremity; occasional crawling or exposure to vibration of the left upper extremity, or hazards; no climbing of ladders, ropes, or scaffolding; be off task up to ten percent of the workday in addition to regularly scheduled breaks; and limited to tasks that do not involve fast paced production. ECF No. 7-2 at 22. At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, such as: a general office clerk (4,300 jobs in the States of Michigan and Wisconsin); an information/appointment clerk (3,500 jobs); or a production worker (2,000 jobs). ECF No. 7-2 at 25. Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured. ECF No. 7-2 at 26.

Plaintiff contests the ALJ's decision as it relates to: (1) his finding that Plaintiff's mental impairments were not severe at step two; (2) his application of the Medical-Vocational Guidelines (the "grids"); and (3) the weight afforded to his treating physician Dr. Hilary Gagnon. ECF No. 10 at 2. Upon review of the evidence of record, the Court affirms the ALJ's decision.

Plaintiff's first claim is that the ALJ erred by finding that Plaintiff's mental impairments were "nonsevere" at step two, asserting that the ALJ's RFC finding does not

adequately account for his mental impairments. ECF No. 10 at 3-7. In making this claim, Plaintiff raises three arguments: (1) that there is not substantial evidence to support the ALJ's "nonsevere" determination, (2) that the ALJ improperly afforded little weight to his treating physician's opinion (Dr. Hilary Gagnon), and (3) that since the ALJ did not rely on his treating physician's opinion, the ALJ should have ordered that Plaintiff under go additional mental health testing.

In regard to Plaintiff's first argument (alleging that the ALJ did not rely on substantial evidence when concluding that his mental impairments were nonsevere), this claim fails. An impairment is not severe at step two if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 1521(a); 20 C.F.R. § 416.921(a); SSR 85-28. "Basic work activities" may be activities such as speaking, understanding, remembering simple instructions, using judgment, responding appropriately to supervision and coworkers, and dealing with changes in routine work settings. SSR 85-28; *see also* 20 C.F.R. § 1521(b); 20 C.F.R. § 416.921(b). If the ALJ determines that an impairment is not severe, he must evaluate the medical findings that describe the impairment and render an informed judgment about the limiting effects of the impairment on the claimant's ability to perform basic work activities. SSR 85-28. There must be substantial evidence in the record to support the ALJ's finding that Plaintiff has nonsevere mental impairments that do not affect his ability to work. *See Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). This Court reviews the ALJ's decision only to ensure that substantial evidence supports his decision, even if this Court would have ultimately decided the case differently. *See Kinsella*, 708 F.2d at 1059.

In making his determination that Plaintiff's mental impairments were nonsevere at

step two, the ALJ relied on the following evidence:

> The claimant's medically determinable mental health impairments of post-traumatic stress disorder (PTSD) and depression, considered singly and in combination, also do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> The claimant went over thirty years without receiving any treatment for his mental health impairments and worked at the substantial gainful activity level at semi-skilled positions despite them for a number of years, suggesting his symptoms do not prevent him from working. His diagnoses are also based purely on the claimant's subjective report of symptoms and provided by a non-acceptable medical source, a licensed counselor instead of a psychologist or psychiatrist, which renders the diagnosis and alleged moderate severity less compelling. Additionally, objective examination findings show the claimant appearing alert and oriented times three, pleasant, and polite with normal recent and remote memory, evidencing that his symptoms do not cause significant functional limitations. Further, the claimant reported that Cymbalta medication and talking with the psychologist helps improve his symptoms.
>
> In making the finding that the claimant's mental health impairments are nonsevere, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has no limitation. He reported being capable of managing his personal care, tending to pets, preparing meals, sweeping, shopping, counting change, handling a savings account, using a checkbook, reading, watching television, snowplowing, and attending weddings.
>
> The next functional area is social functioning. In this area, the claimant has no more than mild limitations. Although the claimant reported that he has few friends and socially isolates, he admits to getting along with his mother and two brothers and appeared polite and pleasing during examination. He also admitted engaging in activities that require interaction with others, such as shopping and

> attending weddings. Additionally, he appeared to have no limitations interacting at the hearing with his representative or the undersigned.
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has no more than mild limitations. He asserted that he cannot pay attention long, does not finish what he starts, and has trouble handling stress and adjusting to changes in routine. Nonetheless, he admitted he can follow both written and spoken instructions. He also conceded he engages in multiple activities that require a significant amount of concentration, persistence, and/or pace, such as tending to pets, preparing meals, shopping, managing money, reading, and snowplowing. Additionally, his previous ability to work at the substantial gainful activity level in semi-skilled positions despite his impairments suggests good ability to maintain concentration, persistence, and pace. Furthermore, he appeared to have no limitations in this domain at the hearing, as he was attentive, maintained his focus, and consistently provided relevant answers to questions.
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has experienced none of extended duration, as there is no evidence of the claimant ever needing emergency, hospital, inpatient, or day treatment for his symptoms.
>
> Because the claimant's medically determinable mental health impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

ECF No. 7-2 at 19-20 (citations omitted). In determining that Plaintiff's mental impairments were nonsevere, the ALJ relied on the objective medical evidence within the record. For example, Plaintiff admitted in his Function Report (ECF No. 7-6 at 30-37) that he was capable of doing the following activities, which indicates that Plaintiff's mental impairments do not prevent him from doing basic work activities: shopping for food, reading, following instructions, interacting with others, caring for pets, using a checkbook, preparing food, and walking. ECF No. 7-6 at 30-37. In addition, even though Plaintiff claims that his post-traumatic stress disorder

(PTSD) is one of the mental disorders that impairs his ability to work, Plaintiff testified that the alleged onset events for his PTSD occurred well before he stopped working—indicating that Plaintiff's PTSD has not affected his ability to work. ECF No. 7-2 at 19-20, 45-48, 64. Overall, there is sufficient evidence to support the ALJ's determination that Plaintiff's mental impairments are nonsevere, despite Plaintiff's allegations to the contrary. *Mullen*, 800 F.2d at 545 ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In regard to Plaintiff's second argument (that the ALJ improperly afforded little weight to Dr. Gagnon's opinion), this allegation also fails. Contrary to Plaintiff's assertions, the ALJ did "not substitute his medical judgment for that of the claimant's physicians" simply because he did not afford great weight to Dr. Gagnon's medical opinion as it pertained to Plaintiff's mental health. *Brown v. Comm'r of Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)). While "[g]enerally, the opinions of treating physicians are given substantial, if not controlling, deference," *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'd 149, 156 (6th Cir. 2009), there is no requirement that the ALJ *must* adopt the opinion of a claimant's treating physician if it is inconsistent with the objective evidence of record. *See, e.g.,* 20 C.F.R. § 404.1527(c)(2) (noting that if a treating physician's opinion is not supported by the substantial evidence of record, it will not be given controlling weight).

In his decision, the ALJ explained several reasons for not relying on Dr. Gagnon's opinion in relation to Plaintiff's mental health:

> As for opinion evidence, the undersigned gives little weight to the opinion of treating provider Dr. Hilary Gagnon's opinion asserting that the claimant has moderate limitations in activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace, and has marked episodes of decompensation. First, Dr. Gagnon is not a psychologist or psychiatrist and therefore does not have specialized mental health training, which reduces the persuasiveness of the opinion. Dr. Gagnon's assertions regarding moderate limitations in activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace are also inconsistent with the claimant's admissions in his prehearing function report . . . or the fact that he worked for multiple years at the substantial gainful activity level in semi-skilled jobs. Additionally, the claimant has required no emergency room, hospital, inpatient, or day treatments for his symptoms, which is starkly different from Dr. Gagnon's assertions that the claimant has marked episodes of decompensation.

ECF No. 7-2 at 19-20. The ALJ properly afforded little weight to Dr. Gagnon's opinion since her opinion was inconsistent with the objective evidence of record. *Buxton v. Halter*, 246 F.3d 762, 763 (6th Cir. 2001) (noting that while treating physician's opinions may be entitled to great weight, the ALJ is not bound by conclusory statements regarding whether a person is legally disabled, especially if the ALJ's decision is reasoned). As the ALJ pointed out, the portions of Dr. Gagnon's medical opinion pertaining to Plaintiff's mental health contradict Plaintiff's own admissions of his mental abilities. For example, in the Depression and Anxiety Questionnaire that Dr. Gagnon filled out for Plaintiff, she indicated that Plaintiff has difficulty thinking or concentrating. ECF No. 7-8 at 117. However, Plaintiff admitted in his Function Report that he was able to read, watch television, use a checkbook, care for pets, and follow instructions, which are all activities that require a basic amount of concentration and thinking to accomplish. ECF No. 7-6 at 31-35. In addition, Dr. Gagnon noted that Plaintiff has "marked" episodes of "deterioration or decompensation" that "cause [Plaintiff] to withdraw." ECF No. 7-8 at 119. Yet,

Plaintiff admitted that he spends time with others, including his family and medical personnel, which indicates that he does not "markedly" withdraw himself from situations. ECF No. 7-8 at 119. Overall, the ALJ properly afforded little weight to Dr. Gagnon's opinion about Plaintiff's mental health since her opinion was inconsistent with the evidence of record.

Finally, in regard to Plaintiff's third argument (that the ALJ should have ordered Plaintiff to undergo additional testing since he did not rely on Dr. Gagnon's opinion), this assertion also fails. ECF No. 10 at 6. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917) ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). Since there was sufficient testimony and evidence of record for the ALJ to evaluate Plaintiff's mental impairments, the ALJ did not abuse its discretion by not requesting that Plaintiff undergo further evaluations. *See, e.g., Foster*, 279 F.3d at 356.

Overall, Plaintiff's first claim fails since: there is substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairments are nonsevere; Dr. Gagnon's opinion is inconsistent with the evidence of record, meaning the ALJ properly afforded her opinion little weight; and the ALJ did not need to order that Plaintiff undergo additional testing before he rendered his decision. 42 U.S.C. § 405(g) (findings of the ALJ are conclusive if they are supported by substantial evidence); *Jones*, 945 F.2d at 1369 (stating substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.").

Plaintiff's second claim is that the "ALJ erred by improperly applying the 'grids' in a mechanical fashion and in failing to consider Plaintiff's significant additional vocational adversities." ECF No. 10 at 7. Specifically, Plaintiff claims that the ALJ improperly applied the grids mechanically when he placed Plaintiff in the "younger person" age category (under 50 years old) rather than the "person closely approaching advanced age" category (ages 50-54). ECF No. 10 at 1, 7. Plaintiff was forty-nine and a half at the time of the ALJ's decision. ECF No. 10 at 1, 7-8.

The Medical-Vocational Guidelines ("grids") were created by the SSA to improve uniformity and efficiency at the fifth step of a disability determination. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 734 (E.D. Mich. Oct. 13, 2009). "The grids are found in the regulations" and they do not predict disability. *Lewis*, 666 F. Supp. 2d at 734-35. Rather, the grids "synthesize the relevant vocational factors of age, education and work experience along with the residual functional capacity by categorizing each factor and creating tables based on these categories." *Id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 200.00(a)).

The age category of the grids is divided into three categories: (1) younger person (under age 50), (2) person closely approaching advanced age (ages 50-54), and (3) person of advanced age (age 55 or older). 20 C.F.R. § 416.963(c)-(e). "If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 416.963(b) (noting the age categories are not to be applied mechanically in borderline situations).

However, use of "the higher age category is not automatic" in all borderline situations. *Lewis*, 666 F. Supp. 2d at 735. The general question used to determine if a higher age category will be used is "whether the claimant has the ability to adjust to other work." *Id.*

In general, "a claimant presents a borderline age situation when: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008). To determine whether to apply the higher age category, the ALJ must use a "sliding scale" approach. *Bowie*, 539 F.3d at 397. "Under this approach, the claimant must show progressively more additional vocational adversity(ies)–to support use of the higher age–as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id.* (noting additional adversities could be impairments such as not speaking English well or a history of work experience in an isolated industry like fishing or forestry). If additional adversities are not present, the ALJ should use the claimant's chronological age. *Id.* at 397-98.

Notably, the regulations do not require that the ALJ "address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Id*. at 398-400 (noting that the regulations state that the ALJ will consider departing from the chronological age category in borderline cases, and the ALJ need not explicitly discuss the issue even if the time period is only a few days); *see also* 20 C.F.R. § 404.1563(b).

Under the first prong for assessing whether a borderline age situation exists, Plaintiff has not shown that his age fell within a "few days to a few months" of reaching the

higher age category.  As of the date of the ALJ's decision, October 3, 2013, Plaintiff was exactly forty-nine and a half years old.  ECF No. 10 at 1, 7-8.  Six months does not present a borderline age situation.  *See, e.g., Ellis v. Comm'r of Soc. Sec.*, No. 1:13-CV-870, 2014 WL 6387145, at *9 (W.D. Mich. Nov. 14, 2014) ("Five months is more than a 'few months.'"); *Reyes v. Comm'r of Soc. Sec.*, No. 1:12-CV-548, 2013 WL 5432100, at *7 (W.D. Mich. Sept. 27, 2013) ("Six months is more than 'a few months.'").  As a result, the ALJ properly classified Plaintiff under the "younger person" age category.  *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 528 (6th Cir. 2006) ("The fact that age categories are not to be applied mechanically, [] obviously does not mean that a claimant must be moved mechanically to the next age category whenever h[is] chronological age is close to that category.").  Therefore, because this was not a borderline age situation, Plaintiff's second claim fails.

As for Plaintiff's third and final claim, he asserts that the "ALJ erred when he failed to appropriately evaluate the opinions of Plaintiff's treating physician [Dr. Gagnon], with respect to his physical conditions." ECF No. 10 at 11. In making this claim, Plaintiff asserts two arguments: (1) that the ALJ should have considered and explicitly analyzed various factors under 20 C.F.R. § 404.1527(c) in determining how much weight to afford the opinion of Dr. Gagnon and (2) that the ALJ should have ordered that Plaintiff undergo additional testing since he did not rely on Dr. Gagnon's opinion.

In regard to Plaintiff's first argument (that the ALJ need to explicitly analyze the factors under § 404.1527(c) when weighing Dr. Gagnon's opinion), this claim fails.  An ALJ may afford a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record.  20 C.F.R. § 1527(c)(2).  Only when the

-14-

ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6).  20 C.F.R. § 1527(c).  Notably, the ALJ is "*not* required to explicitly discuss each of these factors." *Feid v. Comm'r of Soc. Sec.,* No. 1:14-CV-610, 2015 WL 3948201, at *5 (W.D. Mich. June 29, 2015) (emphasis added).

Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner.  20 C.F.R. § 1527(d)(1)-(2) (noting that no special significance is given to medical opinions concluding a person is disabled, or opinions reserved to the Commissioner, such as the nature and severity of a person's impairments).  In general, a treating source's opinion regarding the nature and severity of a claimant's impairment(s) will only be given controlling weight "if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Clemens v. Comm'r of Soc. Sec.,* No. 1:13-CV-514, 2014 WL 4542463, at *4 (W.D. Mich. Sept. 11, 2014) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013)).

In his decision, the ALJ weighed Dr. Gagnon's opinion pursuant to the factors under 20 C.F.R. § 404.1527(c), and ultimately decided to afford her opinion little weight for the following reasons:

> [T]he undersigned gives little weight to the opinion of treating provider Dr. Hilary Gagnon, who asserted that the claimant cannot sit or stand for more than five minutes at one time, walk even one block at a time, needs to use a cane occasionally, and would be absent four or more days per month.  First, Dr. Gagnon's opinion relies on the

> claimant's subjective reports regarding a need for a cane, yet as explained above, there is reason to question the validity of the claimant's subjective complaints and objective examination shows him walking without gait disturbances without using a cane. Dr. Gagnon's assertion regarding the claimant's walking ability is also inconsistent with the claimant's own admissions he can walk a quarter mile to his mailbox in twenty minutes or the undersigned's observation of his gait at the hearing. In addition, Dr. Gagnon's claims regarding the claimant's sitting and standing ability is not consistent with objective examination by an orthopedic specialist showing the claimant having no significant back pain, good range of motion in his neck with no radiation, normal strength and sensation, intact reflexes, negative Spurling's test and no neurological deficits. Furthermore, the number of absences the claimant would have is mere speculation, as Dr. Gagnon has no special training to estimate the number of absences the claimant would need as she does not know the requirements of existing jobs. Moreover, Dr. Gagnon's opinion is inconsistent with objective diagnostic imaging findings showing age related degenerative changes in the claimant's spine, only mild median nerve impairment, and shoulder findings that do not support the claimant's reported pain levels.

ECF No. 7-2 at 23-24 (citations omitted). After implicitly going through the factors of § 404.1527(c), the ALJ properly afforded little weight to Dr. Gagnon's medical opinion, and the objective evidence of record supports that decision. *Feid*, 2015 WL 3948201, at *5 (noting the ALJ is "*not required to explicitly discuss each of these factors*.") (emphasis added). For example, as the ALJ pointed to in his decision, the opinions of Dr. Doppelt and Dr. Songer (both orthopedic specialists) showed that they found little basis for Plaintiff's allegations of pain despite Dr. Gagnon's conclusions. ECF No. 7-8 at 63-66. Dr. Gagnon noted that Plaintiff had pain and limited motion in his left upper extremity. ECF No. 7-8 at 2-3, 6, 8, 89, 94. However, Dr. Doppelt stated that if Plaintiff truly had shoulder pain, it would have improved by the time of his evaluation. ECF No. 7-8 at 65. In addition, Dr. Gagnon reported that Plaintiff had chronic back pain due to degeneration, and that Plaintiff's prognosis was poor. ECF No. 7-8 at 112. Yet,

after evaluating Plaintiff, Dr. Songer stated that Plaintiff, "does not appear to have any specific injury relating to his back or neck and really just has age-related degenerative changes of his neck and low back . . . I am not certain why he was referred to me." ECF No. 7-8 at 63.  Clearly, after implicitly going through the § 404.1527(c) factors, the ALJ properly decided to afford Dr. Gagnon's opinion little weight, which is supported by substantial medical evidence within the record.  See Warner, 375 F.3d at 390 (quoting Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.")); Buxton, 246 F.3d at 763 (noting that the ALJ is not bound by conclusory statements from a treating physician regarding whether a person is legally disabled, especially if the ALJ's decision is reasoned).

    Nonetheless, Plaintiff claims that the ALJ erred in affording Dr. Gagnon's opinion little weight.  Plaintiff contends that 20 C.F.R. § 404.1527(c)(2)(ii) requires the ALJ to afford substantial weight to a treating sources opinion because it states, "[w]hen the treating source has **reasonable knowledge** of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a non-treating source." ECF No. 10 at 17 (emphasis added).  However, Plaintiff overlooks regulation 20 C.F.R. § 404.1527 and the plethora of case law that shows that an ALJ may discredit a treating physician's opinion, despite his or her reasonable knowledge of a patient, if that opinion is not supported by objective medical evidence and the ALJ provides reasons for rejecting that opinion.  See 20 C.F.R. § 1527; see, e.g., Gayheart, 710 F.3d at 376-77; Poe, 342 Fed. App'x at 156; Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); Jones, 336 F.3d at 477; Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994).  Here, the ALJ provided several reasons within his decision to

explain why he afforded little weight to Dr. Gagnon's opinion.  The reasoning provided by the ALJ, and his ultimate decision to afford the opinion of Dr. Gagnon little weight, is supported by objective medical evidence as previously discussed. Therefore, the ALJ did not improperly apply the regulations to Plaintiff's case when he afford little weight to Dr. Gagnon's opinion. *See Gayheart*, 710 F.3d at 376-77.

In regard to Plaintiff's second argument (that the ALJ should have ordered that Plaintiff undergo additional testing since he did not rely on Dr. Gagnon's opinion), this claim also fails.  ECF No. 10 at 17.  The ALJ is not required to order additional testing before he issues a decision, as long as the record supports his decision. *See* SSR 96-5p (stating that *if* evidence does not support a treating doctor's opinion and the ALJ cannot determine the basis of the opinion, ALJ should recontact the source for clarification).  Plaintiff is correct in that "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson v. Perales,* 402 U.S. 389, 400-01 (1971)).  However, when the evidence of record is sufficient to determine disability, the ALJ is not required to recontact the treating physician. *See Jones*, 336 F.3d at 477 (noting that ALJ can discredit treating physician's opinion if not supported by objective medical evidence, and as long as ALJ provides reasons for rejection); *Poe*, 342 Fed. App'x at 156 (noting that it is permissible not to give controlling weight to the treating physician's opinion when the opinion is not supported by objective medical evidence).   Here, the objective medical evidence supports the ALJ's decision to afford Dr. Gagnon's opinion little weight. ECF No. 7-2 at 23-24.  As a result, there was not need for the ALJ to recontact Dr. Gagnon or order additional testing, and Plaintiff's argument fails.

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.

Date: __1/28/2016_____              ___/s/ *Timothy P. Greeley*_____
                                                       HON. TIMOTHY P. GREELEY
                                                       UNITED STATES MAGISTRATE JUDGE